UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EARLE W. JUDD, II,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>JACK F. NEVIN, et al.,<br><br>　　　　　　　　Defendants. | CASE NO. C20-6128JLR<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

## I.　INTRODUCTION

Before the court are several filings responding to the complaint of *pro se* Plaintiff Earle W. Judd, II. (*See* Compl. (Dkt. # 4).) Defendant the Division of Child Services ("DCS") within the State of Washington's Department of Social and Health Services has filed an answer asserting that this court lacks subject matter jurisdiction over Mr. Judd's claims against it. (DCS Ans. (Dkt. # 13).) Defendants Commissioner Sabrina M. Ahrens, Jerry R. Ford, Commissioner Mark L. Gelman, the Honorable Karena K. Kirkendoll, Wayne Liddy, Dalton McIlwain, and the Honorable Jack F. Nevin

(collectively, "Pierce County Defendants") and Defendant Rose M. Eberhart have filed motions to dismiss Mr. Judd's claims against them. (1st MTD (Dkt. # 15) (filed by Pierce County Defendants); (2d MTD (Dkt. # 16) (filed by Ms. Eberhart).) Mr. Judd opposes the motions to dismiss. (*See* 1st Resp. (Dkt. # 18); 2d Resp. (Dkt. # 21); 3d Resp. (Dkt. # 23).)[1] The court has considered the motions, the parties' submissions in support of and in opposition to the motions, and the applicable law. Being fully advised,[2] the court GRANTS Defendants' motions and DISMISSES all claims brought by Mr. Judd with prejudice.

## II. BACKGROUND

Mr. Judd filed suit against all Defendants on November 13, 2020. (*See* Prop. Compl (Dkt. # 1).) His allegations appear to arise from Superior Court proceedings in Pierce County in which he was ordered to pay child support in a domestic relations matter.[3] (*See* Compl. at 1.) According to Mr. Judd, "Defendants knowingly and willfully used fraud and discrimination to hide the complete absence of jurisdiction and defeat the

---

[1] Mr. Judd's filings are labelled as "Plaintiff's Reply to All Answers," "Plaintiff's Additional Reply to Defendant Eberhart," and "Plaintiff's Third Reply to ALL Defendants" respectively. (*See* 1st Resp. at 1; 2d Resp. at 1; 3d Resp. at 1.) The court interprets them as filed in response to both motions to dismiss as well as DCS's answer. Mr. Judd is advised to review the Local Civil Rules, which generally limit a party to filing one response to a motion. *See generally* Local Rules W.D. Wash. LCR 7.

[2] No party requests oral argument (*see* 1st MTD; 2d MTD; 1st Resp.), and the court finds that oral argument is unnecessary to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[3] Mr. Judd does not identify the proceedings that form the basis for his claims by docket number or provide any detailed information about the orders that he alleges violated his rights. (*See generally* Compl.)

Constitution under a vail [sic] of child support." (*Id*.) He brings claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Washington tort law. (*Id*.)

Specifically, Mr. Judd alleges that on June 26, 2018; July 10, 2018; and August 3, 2018, Judge Nevin did not have jurisdiction to enter an order of child support that imputed his income to include Veterans' Administration ("VA") and Social Security Administration ("SSA") disability benefits. (*Id*. at 5.) He also alleges that Judge Kirkendoll had a duty to "void" Judge Nevin's order but did not do so. (*Id*. at 6.) He additionally asserts that Judge Kirkendoll demonstrated gender bias and sex discrimination when making her custody ruling in his case. (*Id*.)

Mr. Judd's allegations do not stop with Judges Nevin and Kirkendoll. He asserts that Ms. Eberhart, his ex-wife's court-appointed attorney, used disability discrimination, gender discrimination, and fraud upon the court "to help Judges Nevin and Kirkendoll deprive [Mr. Judd] of his [r]ights and benefits." (*Id*.) He also alleges that Commissioner Mark Gelman violated his rights by ruling that Mr. Judd was employable on March 12, 2017, and that Deputy Prosecuting Attorney Dalton McIlwain and Legal Assistant Wayne Liddy "helped" in this process. (*Id*. at 7.) He alleges that on November 11, 2017, Commissioner Sabrina Ahrens deprived him of his rights through "veteran specific disability discrimination and threat of incarceration." (*Id*.) He claims that Prosecuting Attorney McIlwain violated his rights through using fraud upon the court by citing the case *Rose v. Rose* and using biased statements from Assistant Prosecuting Attorney Ford and Mr. Liddy. (*Id*. at 8.) He alleges that Mr. Ford lied to the court about the status of Mr. Judd's child support payments and that Mr. Liddy wrote a letter on March 7, 2017,

which contained "ignorant misinformation." (*Id.*) Mr. Judd's complaint does not contain specific allegations against DCS. (*See generally id.* at 5-8.)

Mr. Judd seeks relief in the form of declaratory judgments that state jurisdiction over his federal disability benefits is federally preempted and that the state has "no authority to dissolve or ignore" his rights. (*Id.* at 4.) He also seeks "prospective injunctive relief" in the form of a ruling that the state has "no authority to assign VA or SSA benefits, even for child support" and ordering the state to audit his case and abide by federal law in all future proceedings. (*Id.*) Finally, he seeks a jury trial to determine punitive damages against Defendants in their personal capacity and any other relief deemed appropriate by the jury and the court. (*Id.*)

On March 16, 2021, DCS filed its answer to Mr. Judd's complaint. (*See* DCS Ans.) The agency raises nine affirmative defenses including that Mr. Judd's claims against it are barred by the Eleventh Amendment, *Rooker-Feldman* doctrine, the statute of limitations, and res judicata and/or collateral estoppel. (*Id.* at 5-6.) It asks that Mr. Judd's complaint be dismissed with prejudice. (*Id.* at 6.)

Pierce County Defendants filed a motion to dismiss for failure to state claim on March 18, 2021. (*See* 1st MTD.) They argue this court does not have subject matter jurisdiction to hear a challenge to state court decisions and that judicial and prosecutorial immunity bar any claims against them. (*Id.* at 2-4.) They also argue that the statute of limitations bars any claims arising before November 13, 2017 and that Mr. Judd has failed to allege a constitution violation under 42 U.S.C. § 1983. (*Id.* at 7-10.)

Ms. Eberhart filed her motion to dismiss on March 25, 2020. (*See* 2d MTD.) She argues that Mr. Judd failed to state a claim against her and that his claims against her are barred by the litigation privilege. (*See generally id*.)

### III. ANALYSIS

The court first lays out the appropriate legal standard before analyzing Mr. Judd's claims against the Defendants.

**A. Legal Standard**

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff fails to allege "a cognizable legal theory" or when there is an "absence of sufficient facts alleged" to sustain that legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *see also* Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the court is required on a Rule 12(b)(6) motion to dismiss to accept facts alleged in the complaint as true, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678; *Twombly*, 550 U.S. at 555. Further, although *pro se* complaints are to be construed liberally, even a *pro se* plaintiff "must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation marks and citation omitted).

**B. Claims Related to State Court Decision**

Federal district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *see also Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). "Stated simply, the *Rooker-Feldman* doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Mr. Judd claims that the *Rooker-Feldman* doctrine does not bar his suit because it "does not apply in federal cases that merely attack the legal conclusions of the state court without seeking relief from the state court judgment." (Compl. at 10 (citing *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016)).) But the first three forms of relief that Mr. Judd seeks are declaratory judgements and an injunction undoing the result of state court proceedings in which he was ordered to pay child support after the state court imputed income to Mr. Judd that included his VA and SSA benefits. (*See id.* at 4.) In essence, Mr. Judd is asking this court to overturn the decisions of the Pierce County Superior Court related to imputing his income and entering an order of child support. (*See id.*) This is a de facto appeal and precisely the sort of claim barred under the *Rooker-Feldman* doctrine. *See Noel v. Hart*, 343 F.3d 1148, 1163 (9th Cir. 2003) ("It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains

of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court.") Accordingly, the court grants the Pierce County Defendants' motion to dismiss Mr. Judd's claims to the extent they seek to have this court issue a declaratory judgement or injunction overturning the decisions of the state court. As attempts to amend these claims would be futile, they are dismissed with prejudice. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (explaining district court's discretion in dismissing complaint without leave to amend may include analysis of whether amendment would be futile).

The *Rooker-Feldman* doctrine, however, does not bar Mr. Judd's claims in their entirety. He also seeks to bring claims for damages against individuals involved in the state court process. (*See* Compl. at 4-8.) These claims are not de facto appeals of the state court proceeding and thus do not implicate *Rooker-Feldman*. The court addresses them below.

**C.    Claims Against DCS**

Mr. Judd names DCS as a Defendant, but he does not describe any actions taken by DCS in detail, nor how they relate to his claims. (*See generally* Compl.) Accordingly, the court interprets his claims against DCS as related to the declaratory and injunctive relief that he seeks, because all other claims are related to suits against individuals in their personal capacity. (*See id.* at 4.) But the court has determined that these claims are de facto appeals of the state court proceedings and should be dismissed. *See supra* § III.B. Thus, the court DISMISSES with prejudice Mr. Judd's claims against DCS.

**D.  Claims Against Judicial Defendants**

Judges and those performing judge-like functions are absolutely immune from liability for acts performed in their official capacities. *See Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc). Judicial immunity applies no matter how "erroneous the [judge's] act may have been, and however injurious in its consequence [the act] may have proved to the plaintiff." *Id.* (internal quotation marks omitted) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). Judges lack immunity, however, when they act in the clear absence of all jurisdiction or perform acts not judicial in nature. *Ashelman*, 793 F.2d at 1075; *see also Stump v. Sparkman*, 435 U.S. 349, 360 (1978). "To determine if the judge acted with jurisdiction, courts focus on whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction." *Ashelman*, 793 F.2d at 1076.

Mr. Judd's claims against Judges Nevin and Kirkendoll and Commissioners Gelman and Ahrens are based on actions taken in their official capacities. His allegations against Judge Nevin stem from the judge's decision regarding his order of child support. (*See* Compl. at 5.) His allegations against Judge Kirkendoll stem from her denial of his appeal. (*See id.* at 6.) He alleges that Judge Nevin acted without jurisdiction when he used VA and SSA benefits in the process of issuing an order of child support.[4] (*Id.* at 5.)

---

[4] The court surmises that Mr. Judd's challenge is to subject matter jurisdiction, as he admits that "Judge Nevin certainly had jurisdiction to make a child support order" and does not allege any facts supporting an argument that Judges Nevin or Kirkendoll lacked personal jurisdiction over him. (*See* Compl. at 5.)

But the Supreme Court of the United States has held that state courts have jurisdiction to issue orders like Judge Nevin's. *See Rose v. Rose*, 481 U.S. 619, 636 (1987) (holding state court order of child support relying on VA benefits was not pre-empted under Supremacy Clause).[5] Thus, Judge Nevin was not acting clearly outside the scope of subject matter jurisdiction. *See Ashelman*, 793 F.2d at 1076. The same is true for Judge Kirkendoll, whom Mr. Judd claims "repeated and reinforced all the deprivation of [r]ights" committed by Judge Nevin. (Compl. at 6.)

Mr. Judd raises similar arguments against Commissioners Gelman and Ahrens. He contends that Commissioner Gelman deprived him of his rights by determining that he was employable "in the complete absence of all jurisdiction on the subject matter of VA benefits and 'disability' established by VA decisions." (*Id*. at 7.) Mr. Judd does not provide any arguments to support the claim that Commissioner Gelman, tasked with determining whether Mr. Judd was employable, had jurisdiction to do. (*See generally* Compl.) He makes similar allegations against Commissioner Ahrens, though he does not specifically allege that she lacked jurisdiction. (*See id*. at 7.) At base, Mr. Judd's allegations are that Commissioners Gelman and Ahrens reached the wrong conclusion in proceedings involving Mr. Judd. This is precisely the type of claim that is barred by

---

[5] Mr. Judd claims that after *Rose*, Congress amended the law in question to explicitly pre-empt state court jurisdiction over VA and SSA funds. (*See* Compl. at 15-18.) But subsequent amendment of the statute has not altered the Supreme Court's holding that it does not pre-empt state laws. *See, e.g.*, *Paylor v. Allegheny Cty. Fam. Div./Domestic Rels.*, No. 2:16CV1071, 2017 WL 4235944, at *8 (W.D. Pa. Sept. 25, 2017) (applying *Rose*'s finding of no pre-emption in 2017). Mr. Judd's argument to the alternative does not demonstrate the clear lack of jurisdiction that is required to circumvent judicial immunity from official acts. *See Ashelman*, 793 F.2d at 1076.

judicially immunity, and Mr. Judd has not demonstrated why that immunity should not apply here. *See Ashelman*, 793 F.2d at 1076.

Accordingly, the court finds that Judges Nevin and Kirkendoll and Commissioners Gelman and Ahrens are immune from the claims Mr. Judd seeks to bring against them. The court dismisses Mr. Judd's claims against these four Defendants with prejudice. *See Ecological Rights Found.*, 713 F.3d at 520.

### E.  Claims Against Prosecutor Defendants

"Prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012); *see also Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (holding that prosecutorial immunity protects eligible government officials when they perform functions "intimately associated with the judicial phase of the criminal process"). Prosecutorial immunity extends to "those functions in which the prosecutor acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Lacey*, 693 F.3d at 912 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

Mr. Judd's claims against Prosecuting Attorney McIlwain are based on the attorney's use of the case *Rose v. Rose* and "biased statements" of Deputy Prosecuting Attorney Ford and Mr. Liddy in a proceeding where Mr. Judd was a party. (Compl. at 8.) Mr. Judd's claims against Deputy Prosecuting Attorney Ford are based on his alleged lies

//

//

to the court.[6] (*Id.*) Even construing Mr. Judd's complaint liberally, his allegations against Prosecuting Attorney McIlwain and Deputy Prosecuting Attorney Ford are based on their use, or alleged misuse, of case law and evidence in court. These are actions they took while serving as advocates for the state and in their official capacities as prosecutors. Thus, the court determines that these Defendants are subject to prosecutorial immunity and dismisses Mr. Judd's claims against them with prejudice. *See Ecological Rights Found.*, 713 F.3d at 520.

**F.    Claims Arising Before November 13, 2017**

Mr. Judd brings claims under 42 U.S.C. § 1983 and Washington tort law. Section 1983 provides a federal cause of action, but the limitations period in a § 1983 suit is the same as that which the forum state provides for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions")). In Washington, the statute of limitations for personal injury actions is three years, *see* RCW 4.16.080(2), and this three-year period therefore applies to Mr. Judd's § 1983 claims. *See Hays v. City of Spokane*, No. CV-11-0010-LRS, 2011 WL 4852311, at *2 (E.D. Wash. Oct. 13, 2011) (citing *Robinson v. City of Seattle*, 830 P.2d 318, 347 (Wash. 1992)).

---

[6] Mr. Judd does not allege any particulars of how, when, or what Mr. Ford lied about, let alone how this violated Mr. Judd's constitutional rights. (*See generally* Compl.)

Although the length of the statutory period is governed by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (italics in original). "A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (quoting *Norco Constr., Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986)) (internal quotation marks omitted). "The cause of action accrues even though the full extent of the injury is not then known or predictable" because "otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough . . . ." *Wallace*, 549 U.S. at 391.

The entirety of Mr. Judd's claims against Wayne Liddy are based on alleged injuries that occurred before November 13, 2017. (*See* Compl. at 7-8 (alleging that Defendants' actions on March 17, 2017 and November 11, 2017 injured Mr. Judd). Mr. Judd filed his proposed complaint on November 13, 2020. (*See* Proposed Compl.) Accordingly, Mr. Judd's claims against these Defendants are barred by the statute of limitations and the court dismisses them with prejudice.[7] *See Ecological Rights Found.*, 713 F.3d at 520.

---

[7] Mr. Judd's claims against Commissioners Gelman and Aherns and Prosecuting Attorney McIlwain are also based on alleged injuries that occurred before November 13, 2017. (*See* Compl. at 7-8.) The court has already determined that these Defendants enjoy immunity against Mr. Judd's claims, *see supra* §§ III.D-E, but finds that, to the extent they are based on injuries that occurred before November 13, 2017, they are also barred by the statute of limitations.

**G.      Claims Against Ms. Eberhart**

Mr. Judd alleges that Ms. Eberhart, who served as his ex-wife's court-appointed attorney, "used disability discrimination, gender discrimination, along with outright [f]raud upon the [c]ourt to help Judges Nevin and Kirkendoll" deprive Mr. Judd of his rights. (Compl. at 6-7.) He also asserts that if Ms. Eberhart is not liable as a state actor under § 1983, she "is still liable for her professional misconduct by fraud upon the court and by veteran specific discrimination . . . ." (*Id.* at 7.) Accordingly, the court interprets Mr. Judd's claims against Ms. Eberhart as being divided into two categories: those stemming from § 1983 and those stemming from common law torts. (*See id.* at 1.) The court addresses each category in turn.

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). When publicly-appointed counsel are performing as advocates, *i.e.*, meeting with clients, investigating possible defenses, presenting evidence at trial and arguing to the jury or judge, they do not act under color of state law for 42 U.S.C. § 1983 purposes. *See Georgia v. McCollum*, 505 U.S. 42, 53 (1992); *Miranda v. Clark Cnty.*, 319 F.3d 465, 468 (9th Cir. 2003) (en banc) (finding that public defender defendant was not state actor subject to suit under § 1983 because, so long as he performs a traditional role of attorney for client, "his function," no matter how ineffective, is "to represent his client, not the interests of the state or county"). Mr. Judd's accusations against Ms. Eberhart all stem from actions she took while serving, in court, as his ex-

wife's appointed counsel. (*See* Compl. at 6-7). Accordingly, she was not acting under the color of state law for the purposes of § 1983. The court dismisses these claims against Ms. Eberhart with prejudice. *See Ecological Rights Found.*, 713 F.3d at 520.

Mr. Judd also brings claims against Ms. Eberhart under common law torts based on professional misconduct, fraud upon the court, and veteran-specific discrimination. (Compl. at 7.) Mr. Judd, however, alleges few specific facts regarding what actions of Ms. Eberhart were allegedly tortious. (*See generally id.*) He states that she "insisted he was not disabled because he has not opened his medical records to the [c]ourt," "attacked him with derogatory and defamatory remarks," and "accused him of a crime." (*Id.* at 7.) While the court construes Mr. Judd's complaint liberally, he must still "allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim." *Jones*, 733 F.2d at 649. In his response to Ms. Eberhart's motion, Mr. Judd does not argue that his complaint contains sufficient factual allegations to support these claims, but instead attempts to add a claim of malicious prosecution. (1st Resp. at 7.)[8] He further admits that Ms. Eberhart's arguments against his claims "might be valid under other circumstances, but the Supremacy Clause brings Federal Preemption to the foreground and that determines whether [Mr. Judd] has made a valid [c]omplaint . . . ." (*Id.*) But, as described above, Mr. Judd's claims based on federal pre-emption are de facto challenges to the state court's ruling, and this court does not have subject matter

---

[8] Mr. Judd does not attempt to amend his complaint to include a claim of malicious prosecution (*see generally* Dkt.), nor does he attempt to factually explain how Ms. Eberhart, serving as court-appointed counsel for his ex-wife, could have engaged in malicious prosecution against him (*see generally* 1st Resp.; 2d Resp.).

jurisdiction over them. *See supra* § III.B. Mr. Judd makes no attempt to explain how federal pre-emption provides a basis for his state law tort claims against Ms. Eberhart. (*See generally* 1st Resp.)

Even construed liberally, Mr. Judd's alleged common law tort claims against Ms. Eberhart appear to amount to accusations that she represented his ex-wife in state court proceedings where he did not obtain his desired result. This reading is bolstered by Mr. Judd's consistent references to federal pre-emption in relation to his tort claims against Ms. Eberhart, rather than any attempt to provide a factual context that would support his tort claims. (*See* 1st Resp. at 7.) Mr. Judd has failed to support his accusations against Ms. Eberhart with sufficient facts. Accordingly, the court grants Ms. Eberhart's motion to dismiss Mr. Judd's tort claims against her.

Unlike Mr. Judd's other claims, however, his tort claims against Ms. Eberhart are deficient because of his failure to allege sufficient facts to support them. Accordingly, the court dismisses these claims without prejudice and with leave to amend. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (noting *pro se* litigants are entitled to an opportunity to amend prior to dismissal if it is not clear that no amendment could cure the deficient complaint). Mr. Judd may file an amended complaint to address the deficiencies in his tort claims against Ms. Eberhart within 14 days of the filing of this order. If Mr. Judd fails to file an amended complaint that remedies the deficiencies identified herein, the court will dismiss the remainder of his complaint without leave to amend.

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motions to dismiss (Dkt. ## 15, 16).  The court DISMISSES Mr. Judd's common law tort claims against Ms. Eberhart without prejudice and with leave to amend to include more factual support for his allegations.  Mr. Judd shall file an amended complaint, if any, rectifying the deficiencies in these claims against Ms. Eberhart within 14 days of the filing of this order.  The court DISMISSES all of Mr. Judd's other claims against the Defendants, including all pre-emption related claims with prejudice and without leave to amend.

Dated this 4th day of May, 2021.

_____
JAMES L. ROBART
United States District Judge